ROGER J. BROTHERS, BAR NO. 118622
rbrothers@bpbsllp.com
DOMINIC V. SIGNOROTTI, BAR NO. 267712
dsignorotti@bpbsllp.com
BUCHMAN PROVINE BROTHERS SMITH LLP
2033 N. Main Street, Suite 720
Walnut Creek, California 94596
Telephone:   925 944 9700
Facsimile:    925 944 9701

Attorneys for Plaintiffs
BLUESKY COMPANIES, INC., a California corporation; PETER VILLA; PAUL HUNTER; ANTHONY TULINO; and OLIVER MARKHAM HEALEY III

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BLUESKY COMPANIES, INC., a California corporation; PETER VILLA; PAUL HUNTER; ANTHONY TULINO; and OLIVER MARKHAM HEALEY III,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN HALL; BLUESKY COMPANIES, INC., a California corporation; and DOES 1-40, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR (1) NEGLIGENT MISREPRESENTATION; (2) INTENTIONAL MISREPRESENTAITON (3) FRAUD; (4) BREACH OF FIDUCIARY DUTY; (5) BREACH OF FIDUCIARY DUTY; (6) VIOLATION OF CAL. CORP. CODE § 1600; AND (7) DECLARATORY RELIEF** |

Plaintiffs PETER VILLA, PAUL HUNTER, ANTHONY TULINO and OLIVER MARKHAM HEALEY III, individually and on behalf of BlueSky Companies, Inc., a California corporation (hereinafter, "BlueSky" or the "Corporation") (each individually, a "Plaintiff," and collectively, the "Plaintiffs"), allege against defendants BRIAN HALL and BLUESKY COMPANIES, INC., a California corporation, and DOES 1-40 (each a "Defendant" and collectively, the "Defendants"), inclusive, as follows:

**PARTIES**

1.   Plaintiff PETER VILLA is an individual residing in Concord, California, and at all

414258.7                                                                                                            COMPLAINT

1 relevant times herein was, and remains, a shareholder of the Corporation.

2. Plaintiff PAUL HUNTER is an individual residing in Plainsboro, New Jersey, and at all relevant times herein was, and remains, a shareholder of the Corporation.

3. Plaintiff ANTHONY TULINO is an individual residing in Langhorne, Pennsylvania, and at all relevant times herein was, and remains, a shareholder of the Corporation.

4. Plaintiff OLIVER MARKHAM HEALEY III is an individual residing in Atlanta, Georgia, and at all relevant times herein was, and remains, a shareholder of the Corporation.

5. Defendant BRIAN HALL is an individual residing in San Ramon, California, and at all relevant times herein was, and remains, a director, officer and shareholder of the Corporation.

6. Defendant BLUESKY COMPANIES, INC. is a California corporation, was duly organized and exists under the laws of the State of California, and is not subject to The Banking Law or The Public Utilities Act. Plaintiffs are informed and believe, and based thereon allege, that the principal office of BlueSky is located in San Ramon, Contra Costa County, California.

7. Plaintiffs are ignorant of the true names and capacities of Defendants sued as DOES 1-40, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.

## JURISDICTION

8. This is an action between citizens of different states in which the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. Jurisdiction is therefore proper in this Court. (28 U.S.C. § 1332(a)(1).)

## VENUE

9. A substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in this judicial district. (28 U.S.C. § 1391(b)(2).)

## GENERAL ALLEGATIONS

10. BlueSky was formed on January 7, 2004, by Mr. Villa, Mr. Hall, Rory Holland and Richard Beermann. BlueSky is in the internet marketing business, and targets sub-prime automobile buyers in order to generate internet leads to auto dealerships around the country who

1   specialize in sub-prime auto finance. BlueSky has approximately 35 employees.

2       11.     BlueSky is authorized to issue a single class of common stock. In 2004, Mr. Beerman and Mr. Hall orchestrated an offering of common stock in BlueSky and represented that each share of common stock would have a par value of $1.00. Mr. Hall and Mr. Beerman represented to prospective shareholders that BlueSky intended to raise $500,000 during this initial subscription period. As an inducement to prospective shareholders to purchase stock during this initial offering, Mr. Hall and Mr. Beerman represented that they each purchased $100,000 worth of BlueSky common stock. Plaintiffs are informed and believe, and based thereon allege, that Mr. Hall's and Mr. Beerman's representation that they each purchased $100,000 worth of BlueSky stock was not accurate, and that neither Mr. Hall nor Mr. Beerman ever paid $100,000 in consideration for the 265,620.40 shares of BlueSky common stock which was issued to them in 2004. Instead, Plaintiffs are informed and believe, and based thereon allege, that Mr. Hall and Mr. Beerman "purchased" their stock in BlueSky via an unsecured promissory note, in violation of California Corporations Code § 409(a)(1), and that Mr. Hall and Mr. Beerman subsequently, without the knowledge of BlueSky's entire Board of Directors, caused BlueSky to forgive these promissory notes. In other words, neither Mr. Beerman nor Mr. Hall ever paid a cent for their shares in BlueSky. Mr. Beerman's and Mr. Hall's deceptive and misleading conduct at the formation of BlueSky was indicative of how they would run the Corporation for the subsequent decade.

    12.     Plaintiffs all purchased BlueSky common stock in 2004. As of the current date, Plaintiffs own the following amounts of BlueSky common stock: Paul Hunter—87,286.80 shares; Peter Villa—71,690.60 shares; Markham Healey—24,705.88 shares; and Anthony Tulino—10,000 shares. Collectively, Plaintiffs own 193,683.28 shares of BlueSky common stock. Based on information and belief, there are currently outstanding 1,074,705.88 shares of BlueSky common stock.

    13.     Mr. Villa has served in various officer roles since founding BlueSky, including Chief Financial Officer, Secretary and Treasurer. Mr. Villa was also a member of BlueSky's Board of Directors (the "Board") until April 2009, when he voluntarily resigned his position. Mr.

Hunter is a shareholder and the Vice President of Sales, and Mr. Tulino is a shareholder and sales representative for BlueSky. Mr. Healey is a shareholder of BlueSky, and was formerly employed by BlueSky to build out its direct mailing product.

14. Mr. Villa resigned from his officer and director positions in April, 2009 due to disagreements with Mr. Hall and Mr. Beermann with respect to their management of the Corporation. From BlueSky's inception, Mr. Hall and Mr. Beermann focused control of the Corporation in their hands, and routinely acted as if BlueSky was theirs alone to operate and control. During his time as a director, between 2005 and 2009, Mr. Villa did not participate in any Board meetings, and is unaware of any Board meetings having taken place. By and large, BlueSky's business was controlled by Mr. Hall and Mr. Beermann.

15. Plaintiffs are informed and believe, and based thereon allege, that Mr. Villa's resignation of his director position created a vacancy on BlueSky's Board, and left Mr. Hall and Mr. Beermann as the two (2) active remaining Board members. Plaintiffs are further informed and believe, and based thereon allege, that BlueSky did not fill the vacancy on its Board until November, 2014.

16. Plaintiffs are informed and believe, and based thereon allege, that on or about November 28, 2014, a Board meeting was held wherein Mr. Hall and Mr. Beermann addressed the vacancy on the Board. The minutes of this meeting indicate that Mr. Holland, a BlueSky shareholder who resigned from his employment position with the Corporation in 2009, was being "removed" from the Board effective November 29, 2014. Plaintiffs are informed and believe, and based thereon allege, that Mr. Holland did not participate in Board meetings or decisions made by the Board during the period in which he was allegedly a Board member, and further that Mr. Holland had no meaningful participation with respect to BlueSky's Board between 2005 and 2014. For all intents and purposes, BlueSky was run by Mr. Hall and Mr. Beermann, without the participation of, or reference to any other elected members of the Board.

17. Pursuant to the November 28, 2014 minutes, the Board "confirmed" that there were a total of four (4) authorized director seats, and that two (2) of those seats were currently filled by Mr. Hall and Mr. Beermann. According to the November 28, 2014 minutes, Sherry

Morse was appointed to fill one (1) of the vacancies on the Board, meaning that the Board consisted of Mr. Hall, Mr. Beermann and Ms. Morse as of November 28, 2014. Plaintiffs are informed and believe, and based thereon allege, that Ms. Morse lacked the relevant experience and qualifications to serve on BlueSky's Board, and that her appointment was brought about primarily in order to ensure that a person who would vote according to the instructions of Mr. Hall and Mr. Beermann would be on the Board.

**The Reverse Stock Split**

18. Unbeknownst to Plaintiffs, in or around 2015, Mr. Hall and Mr. Beermann were colluding with one another to orchestrate a plan to dilute Plaintiffs' equity in BlueSky, while at the same time increasing their own. Due to BlueSky's unlawful refusal to open its financial books or provide Board meeting minutes to Plaintiffs, Plaintiffs are unable to determine at this time whether Ms. Morse actively conspired with Mr. Hall and Mr. Beermann, or whether she was unaware of their unlawful conduct.

19. Specifically, Plaintiffs are informed and believe, and based thereon allege, that in or around 2015, Mr. Hall and Mr. Beermann set in motion a plan to effectuate a reverse stock split, and then issue stock to a select group of shareholders, including themselves, with the goal of artificially diluting Plaintiffs' equity in BlueSky (the "Reverse Stock Split"). This conspiracy was intended to enrich a select group of "friendly" shareholders, at the expense of other shareholders of the Corporation and BlueSky itself.

20. On May 12, 2015, acting deliberately without Plaintiffs' knowledge or approval, Mr. Hall and Mr. Beermann caused Amended Articles of Incorporation for BlueSky (the "Amended Articles") to be filed with the California Secretary of State. Pursuant to the Amended Articles, every existing ten (10) shares of BlueSky's Common Stock was reversed split to one (1) share. Plaintiffs are informed and believe, and based thereon allege, that Mr. Hall and Mr. Beermann were the driving forces behind this action, and that they convinced Ms. Morse, the third director on the Board, to approve of the decision based on the misrepresentation that this action was in the best interest of the Corporation. Plaintiffs are informed and believe, and based thereon allege, that the Board unanimously approved of the filing of the Amended Articles.

Furthermore, Plaintiffs are informed and believe, and based thereon allege, that Mr. Hall and Mr. Beermann represented to the shareholders of BlueSky that the proposed reverse stock split was in the best interest of the Corporation and its shareholders; when in reality, the reverse stock split and subsequent issuance of stock was designed to enrich themselves personally.

21.  On May 13, 2015, for the first time, Mr. Hall advised Plaintiffs of the Reverse Stock Split, and represented that "this reverse split only affects the number of shares you own and does not affect your percentage ownership in the Corporation or the cumulative value of your shares." Mr. Hall's representation was not true, and was belied by a "Capitalization Table" attached to his correspondence. That Capitalization Table evidenced that although the reverse stock split did not affect Plaintiffs' equity interest in BlueSky, the simultaneous issuance of stock to a select group of friendly shareholders did.

22.  As a result of Reverse Stock Split, Plaintiffs' equity in BlueSky was significantly reduced as follows: Mr. Hunter (7.07% to 0.50%); Mr. Villa (5.80% to 0.024%); Mr. Healey (2.0% to 0.5%); and Mr. Tulino (0.81% to 0.03%). In contrast, both Mr. Hall's and Mr. Beermann's equity in BlueSky was increased by more than 66% each, from 21.5% to 32.5%, based on a grant of 948,437.96 additional shares to each of them, at the artificially deflated value of $0.01 per share. Ms. Morse was granted 15,000 shares in this transaction, for total consideration of $150.00. Mr. Hall and Mr. Beermann engaged in a scheme to enrich themselves personally, to the detriment of Plaintiffs, by increasing their equity in the Corporation by 66% and issuing additional shares to themselves. In other words, on May 12, 2015, Mr. Beermann and Mr. Hall forced through the Reverse Stock Split, without providing notice to Plaintiffs, and awarded themselves each an additional 11% equity in the Corporation for $9,484.38. Mr. Hall and Mr. Beermann did not even pay the $9,484.38 in consideration themselves. Rather, they caused BlueSky to increase their compensation by $9,484.38 to pay for their new shares.

23.  Mr. Beermann passed away June 15, 2015. Although not disclosed to, or approved by Plaintiffs at the time, it was subsequently represented by BlueSky that Mr. Beermann's BlueSky stock was transferred to his wife, Vicki Beermann. Based on information and belief, Mrs. Beermann remains a shareholder of BlueSky.

24. In recognition that the reverse stock split and subsequent issuance of stock to certain shareholders was accomplished improperly, and not in the best interest of BlueSky or its shareholders, on January 29, 2016, Ms. Morse advised the Corporation's shareholders that the reverse stock split and subsequent issuance of stock would be unwound.

**The Excessive and Unauthorized "Bonuses"**

25. In addition to pushing through a reverse stock split which was not in the best interest of the Corporation, Plaintiffs have learned that between 2012 and 2014, Mr. Hall and Mr. Beermann caused BlueSky to pay excessive and unauthorized compensation, which they labeled "bonuses," to a select group of officers, including themselves. In reality, these "bonuses" were nothing more than "disguised dividends" intended to enrich Mr. Hall and Mr. Beermann at the expense of BlueSky and its shareholders. Plaintiffs are informed and believe, and based thereon allege, that no Board meetings were held to debate the practicality and/or appropriateness of these "bonuses", and that BlueSky's shareholders were never apprised of these "bonuses." Plaintiffs have been given only limited financial information regarding BlueSky's finances, and are therefore unable to ascertain the true extent of Defendants' misconduct. However, based on information and belief, between 2012 and 2014 Mr. Hall and Mr. Beermann caused the following amounts of "bonuses" to be given to certain BlueSky officers between 2012 and 2014: $429,068 in 2012, $538,946 in 2013 and $1,221,458 in 2014. In addition, Plaintiffs are informed and believe, and based thereon allege, that Mr. Hall and Mr. Beermann caused BlueSky to make additional payments to their family members, with the intent and design of providing themselves with additional unauthorized compensation, at the expense of the Corporation and its shareholders.

**The April 15, 2016 Meeting**

26. BlueSky noticed its annual meeting of shareholders for April 15, 2016. Based on information and belief, this was the first time that an annual meeting of BlueSky shareholders was held. In the previous 11 years of BlueSky's existence, not a single annual shareholders meeting was held.

27. Since Mr. Beermann's death in June, 2015, BlueSky's Board of Directors operated

with only two (2) directors, Ms. Morse and Mr. Hall, in violation of California Corporations Code § 212(a). Section 3.3 of the Bylaws of BlueSky Companies, Inc. dated March 8, 2007 (the "2007 Bylaws") requires that directors be elected to the Board at each annual meeting of shareholders. Given the requirements of both the 2007 Bylaws and the California Corporation's Code, one of the agenda items for the April 15th meeting was to elect directors to fill the three (3) spots on the Board.

28.   Prior to the meeting, ballots were distributed to BlueSky's shareholders to vote their shares for the open positions on the Board of Directors. At the meeting, the votes were tallied with three (3) shareholders, Mr. Hall, Ms. Morse and Mr. Villa, receiving votes to fill the four (4) open seats on the Board. The following shareholders voted for Mr. Villa's election to the Board—Peter Villa, Paul Hunter, Robert Holland, Anthony Tulino, Michael Dawson and Markham Healey. Each of these individuals, aside from Mr. Holland, completed the ballot distributed prior to the meeting. Mr. Holland relayed his intent to vote for Mr. Villa via text message during the meeting. In counting the votes in favor of Mr. Villa, Ms. Morse declined to count Mr. Holland's vote unless he returned a copy of the ballot. Based on information and belief, he has not yet done so. Thus, without counting Mr. Holland's vote, 203,683.28 shares, or 22.251% of the outstanding shares, voted for Mr. Villa's appointment to the Board. Were Mr. Holland's vote counted, 363,017.08 shares, or 33.778% of the outstanding shares, would have been voted in favor of Mr. Villa's appointment to the Board. Whichever way one looks at it, only Mr. Villa, Mr. Hall and Ms. Morse received votes to fill three (3) of the four (4) vacant seats on the BlueSky Board.

29.   Notwithstanding the fact that Mr. Villa was voted to fill one of the vacant seats on the Board, BlueSky refused to seat him, and permitted only Mr. Hall and Ms. Morse to fill seats on the Board. BlueSky's refusal to seat Mr. Villa to the Board was a direct violation of Section 2.11(c) of the 2007 Bylaws, which provides that the "candidates for directors receiving the highest number of affirmative votes of shares entitled to be voted for them, up to the number of directors to be elected by such shares, shall be elected."

30.   In addition, BlueSky's refusal to seat Mr. Villa after his election means that the

Corporation is continuing to operate with just two (2) Board members, in direct violation of both Section 3.2 of the 2007 Bylaws, which requires a minimum of four (4) directors, as well as Corporations Code § 212(a), which requires a minimum of three (3) directors for corporations with more than two (2) shareholders. Plaintiffs advised BlueSky of these violations, but the Corporation refused to change course and allow Mr. Villa to fill the seat to which he was elected.

31. As further evidence of BlueSky's unlawful conduct, prior to the shareholder's meeting, Mr. Hunter requested permission to record the meeting, for the sake of preserving a record. Ms. Morse refused Mr. Hunter's request for him to record the meeting, but agreed that she would record the meeting on behalf of BlueSky's shareholders. After the meeting was concluded, Mr. Hunter requested a copy of the recording on multiple occasions. Ms. Morse refused to provide Mr. Hunter with a copy of the recording, leaving Plaintiffs without any neutral record of the events of the April 15th meeting.

**BlueSky's Inspection Refusals**

32. On November 20, 2015, Mr. Villa requested that the BlueSky make available for inspection all of its "books of account, record of shareholders, and minutes of proceedings of the shareholders and the board and committees of the board" of BlueSky, and its wholly-owned subsidiary, BlueSky Marketing Group, Inc. This request was made pursuant to California Corporations Code § 1601. Mr. Villa also specifically demanded that fully executed copies of all shareholder, board and committee resolutions concerning the purported reverse stock split of BlueSky's stock in 2015 be made available for inspection. BlueSky initially refused to produce documents in response to Mr. Villa's request, and eventually produced only limited documentation in response to Mr. Villa's request, in violation of California Corporations Code § 1601.

33. Given the limited documents to which Plaintiffs have been provided access by BlueSky, it is impossible for Plaintiffs to determine at this time the scope or breadth of Ms. Morse's participation in the transactions described above.

**Plaintiffs' Derivative Demand to BlueSky's Board**

34. On January 12, 2016, Plaintiffs made a written demand to the Board to pursue the

414258.7                                        - 9 -                                        COMPLAINT

derivative claims alleged herein, pursuant to California Corporations Code § 800(b)(2). Plaintiffs demanded that the Board pursue claims for negligent and intentional misrepresentation, fraud and breach of fiduciary duty against Mr. Hall arising from the reverse stock split and subsequent issuance of stock to selective shareholders, which significantly diluted Plaintiffs' equity interest in BlueSky, and the issuance by Mr. Hall of "bonuses" to select shareholders and directors after the reverse stock split, which in reality were disguised dividends intended to benefit only a select group of shareholders, in potential violation of California and Federal law. The Board refused to take the action requested by Plaintiffs, which necessitated the filing of the instant Complaint.

## FIRST CAUSE OF ACTION

### Negligent Misrepresentation

### (By BlueSky Against Defendant Hall and DOES 1-5)

35. Plaintiffs reallege and incorporate herein by reference the allegations contained in Paragraphs 1 through 34, inclusive, of this Complaint, as though set forth in full herein.

36. Plaintiffs are informed and believe, and based thereon allege, that Mr. Hall negligently misrepresented to BlueSky's shareholders and the Board the intent, purpose and appropriateness of the "bonuses" which he caused BlueSky to pay to himself, Mr. Beerman, Ms. Morse and their respective family members and spouses. Mr. Hall's representations to the Board and its shareholders regarding these "bonuses" were not true, as the payments were in fact nothing more than "disguised dividends."

37. Plaintiffs are informed and believe, and based thereon allege, that Mr. Hall had no reasonable grounds to believe that his representations to the Board and its shareholders regarding the intent, purpose and appropriateness of the "bonuses" which he caused BlueSky to pay to himself, Mr. Beerman, Ms. Morse and their respective family members and spouses were in fact true at the time he made said representations. Mr. Hall made these representations with the intent that the Board and its shareholders rely on the representations and not question the suitability, legality and/or appropriateness of said payments.

38. Plaintiffs are informed and believe, and based thereon allege, that the Board and BlueSky's shareholders reasonably relied on Mr. Hall's representations, and that this reliance was

a substantial factor in causing harm to the Corporation and its shareholders, in that the "disguised dividends" were issued in direct violation of the California Corporations Code and Internal Revenue Service guidelines, something which may subject the Corporation to liability and/or scrutiny with the Internal Revenue Service and other taxing authorities.

39. Plaintiffs are informed and believe, and based thereon allege, that BlueSky was harmed by these transactions, in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for damages as set forth below.

## SECOND CAUSE OF ACTION

### Intentional Misrepresentation

### (By BlueSky Against Defendant Hall and DOES 6-10)

40. Plaintiffs reallege and incorporate herein by reference the allegations contained in Paragraphs 1 through 39, inclusive, of this Complaint, as though set forth in full herein.

41. Plaintiffs are informed and believe, and based thereon allege, that Mr. Hall intentionally misrepresented to BlueSky's shareholders and the Board the intent, purpose and appropriateness of the "bonuses" which he caused BlueSky to pay to himself, Mr. Beerman, Ms. Morse and their respective family members and spouses. Mr. Hall's representations to the Board and its shareholders regarding these bonuses were not true, as the payments were in fact nothing more than "disguised dividends."

42. Plaintiffs are informed and believe, and based thereon allege, that Mr. Hall knew that his representations to the Board and its shareholders regarding the intent, purpose and appropriateness of the "bonuses" which he caused BlueSky to pay to himself, Mr. Beerman, Ms. Morse and their respective family members and spouses were in fact true at the time he made said representations. Mr. Hall made these representations with the intent that the Board and its shareholders rely on the representations and not question the suitability, legality and/or appropriateness of said payments.

43. Plaintiffs are informed and believe, and based thereon allege, that the Board and BlueSky's shareholders reasonably relied on Mr. Hall's representations, and that this reliance was a substantial factor in causing harm to the Corporation and its shareholders, in that the "disguised

dividends" were issued in direct violation of the California Corporations Code and Internal Revenue Service guidelines, something which may subject the Corporation to liability and/or scrutiny with the Internal Revenue Service and other taxing authorities.

44.  Plaintiffs are informed and believe, and based thereon allege, that BlueSky was harmed by these transactions, in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for damages as set forth below.

### THIRD CAUSE OF ACTION

### Fraud

### (By BlueSky Against Defendant Hall and DOES 11-15)

45.  Plaintiffs reallege and incorporate herein by reference the allegations contained in Paragraphs 1 through 44, inclusive, of this Complaint, as though set forth in full herein.

46.  Plaintiffs are informed and believe, and based thereon allege, that Mr. Hall had a fiduciary relationship with BlueSky and its shareholders, given his position as an officer and director of the Corporation, and that Mr. Hall failed to disclose to BlueSky's shareholders and/or its Board the fact that he and Mr. Beermann were awarding themselves excessive "bonuses" and compensation, without Board and/or shareholder knowledge or approval.

47.  Plaintiffs are informed and believe, and based thereon allege, that BlueSky's shareholders were not made aware of the fact that Mr. Hall was orchestrating the payment of "bonuses" and compensation to himself, Mr. Beermann, and their spouses and family, and that Mr. Hall intended to deceive BlueSky and its shareholders about his conduct with the goal of personally enriching himself at the expense of the Corporation.

48.  Plaintiffs are informed and believe, and based thereon allege, that had Mr. Hall been honest about his intention to cause BlueSky to pay to the excessive compensation and "bonuses," they never would have been approved by the BlueSky Board or its shareholders, given the fact that the compensation was financially detrimental to the Corporation, and that the "bonuses" were, in reality, nothing more than "disguised dividends" which were issued in direct violation of the California Corporations Code and Internal Revenue Service guidelines, something which may subject the Corporation to liability and/or scrutiny with the Internal

Revenue Service and other taxing authorities.

49.   Plaintiffs are informed and believe, and based thereon allege, that BlueSky and its shareholders have been directly harmed by Mr. Hall's fraudulent conduct in that BlueSky has paid to Mr. Hall, Mr. Beermann and their families monies which it otherwise would have retained, that the payment of said monies was done without proper authorization and/or approval from BlueSky's Board and/or its shareholders, and that the "bonuses" were in reality "disguised dividends" which may subject the Corporation to liability and/or scrutiny with the Internal Revenue Service and other taxing authorities.

WHEREFORE, Plaintiffs pray for damages as set forth below.

## FOURTH CAUSE OF ACTION

### Breach of Fiduciary Duty

### (By BlueSky Against Defendant Hall and DOES 16-20)

50.   Plaintiffs reallege and incorporate herein by reference the allegations contained in Paragraphs 1 through 49, inclusive, of this Complaint, as though set forth in full herein.

51.   Plaintiffs are informed and believe, and based thereon allege, that Mr. Hall had a fiduciary relationship with BlueSky and its shareholders, given his position as an officer and director of the Corporation.  By virtue of his position as an officer and director of the Corporation, Mr. Hall owed BlueSky a fiduciary duty of, among other things, the duty of reasonable care, diligence, loyalty and disclosure in performing his duties.

52.   Mr. Hall breached his fiduciary duties to the Corporation by, among other things: (1) failing to disclose to BlueSky's Board and/or its shareholders the "bonuses" provided to himself, Mr. Beermann and Ms. Morse, and their spouses and children; (2) orchestrating the reverse stock-split and subsequent issuance of stock; (3) subjecting BlueSky to potential liability with the Internal Revenue Service and California Franchise Tax Board due to the issuance of "disguised dividends"; and (4) in each of the actions described herein, by placing his personal interests above those of the Corporation and its shareholders.

53.   As a proximate result of Mr. Hall's breaches of his fiduciary duties, BlueSky and its shareholders have been damaged in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for damages as set forth below.

## FIFTH CAUSE OF ACTION

### Breach of Fiduciary Duty

### (By Plaintiffs Against Defendant Hall and DOES 21-25)

54. Plaintiffs reallege and incorporate herein by reference the allegations contained in Paragraphs 1 through 53, inclusive, of this Complaint, as though set forth in full herein.

55. Plaintiffs are informed and believe, and based thereon allege, that Mr. Hall was a controlling shareholder of the Corporation, and on that basis he owed a fiduciary relationship to the Corporation's minority shareholders, including Plaintiffs.  By virtue of his position as a controlling shareholder of the Corporation, Mr. Hall owed the minority shareholders, including Plaintiffs, a fiduciary duty of, among other things, the duty of reasonable care, diligence, loyalty and disclosure in performing his duties.

56. Mr. Hall breached his fiduciary duties to Plaintiffs by, among other things: (1) causing BlueSky to pay "bonuses" to him, Mr. Beermann, Ms. Morse and their family members; (2) orchestrating the reverse stock-split and subsequent issuance of stock, which diluted Plaintiffs' equity in the Corporation; (3) subjecting BlueSky to potential liability with the Internal Revenue Service and California Franchise Tax Board due to the issuance of "disguised dividends"; and (4) in each of the actions described herein, by placing his personal interests above those of the Corporation and its shareholders.

57. As a proximate result of Mr. Hall's breaches of his fiduciary duties, Plaintiffs have been damaged in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for damages as set forth below.

## SIXTH CAUSE OF ACTION

### Violation of California Corporations Code § 1600 *et seq.*

### (By Plaintiffs Against BlueSky and DOES 26-30)

58. Plaintiffs reallege and incorporate herein by reference the allegations contained in Paragraphs 1 through 57, inclusive, of this Complaint, as though set forth in full herein.

59. Section 1600, *et seq.* of the California Corporations Code provides a shareholder

who holds more than five-percent (5%) of the outstanding shares in a corporation with the right to demand from the corporation certain books and records, including accounting books and records and minutes of proceedings of the shareholders.

60. Plaintiffs collectively own more than five-percent (5%) of the outstanding shares of BlueSky, and on that basis, made multiple demands to the Corporation to produce the Corporation's books of account, record of shareholders and minutes of proceedings of the shareholders and the board and committees of the board, including those of BlueSky's wholly-owned subsidiary, BlueSky Marketing Group, Inc.

61. Notwithstanding the demands by Plaintiffs, the Corporation, acting through Ms. Morse and its corporate counsel, has refused to provide Plaintiffs with full and complete access to the requested documents.

62. As a result of the Corporation's wrongful conduct, as alleged above, Plaintiffs have been substantially harmed in that they has been precluded from full access to the Corporation's records, and has been prevented from verifying and investigating the full extent of the Corporation's and Mr. Hall's wrongful conduct, and Ms. Morse's complicity in this unlawful conduct.

WHEREFORE, Plaintiffs pray for damages as set forth below.

## SEVENTH CAUSE OF ACTION

### Declaratory Relief

**(By Plaintiffs Against Defendant BlueSky and DOES 31-35)**

63. Plaintiffs reallege and incorporate herein by reference the allegations contained in Paragraphs 1 through 62, inclusive, of this Complaint, as though set forth in full herein.

64. An actual controversy exists between Plaintiffs, on the one hand, and BlueSky, on the other hand, in that Plaintiffs contend that since June 15, 2015, BlueSky's Board has included only two (2) members, and that the Board has made a number of decisions with just two (2) members voting. Plaintiffs are further informed and believe that any actions taken by BlueSky's Board during the period in which it consisted of just two (2) members is a violation of both California Corporations Code § 212(a) and Section 3.3 of the 2007 Bylaws, and consequently

*ultra vires* and of no legal effect. Based on information and belief, Defendant BlueSky disputes this contention.

65. An actual controversy exists between Plaintiffs, on the one hand, and BlueSky, on the other hand, in that Plaintiffs contend that Mr. Villa was voted onto BlueSky's Board by the vote of the shareholders during the April 15, 2016 shareholders meeting, and that BlueSky's refusal to sit Mr. Villa on the Board is a violation of Section 2.11(c) of the 2007 Bylaws. Based on information and belief, Defendant BlueSky disputes this contention.

66. Plaintiffs seek a judicial determination of their rights and duties and a declaration that (1) any acts purported to have been taken by the Board on behalf of BlueSky during the period in which it consisted of two (2) directors are *ultra vires* and of no effect; and (2) that Mr. Villa was voted onto the Board and has the right to serve as a director on BlueSky's Board until his removal and/or resignation, pursuant to the 2007 Bylaws.

67. A judicial declaration is necessary and appropriate at this time because Plaintiffs rights and interest with respect to BlueSky are being harmed as a result of the Board's actions while consisting of only two (2) members and the refusal to seat Mr. Villa on the Board.

WHEREFORE, Plaintiffs pray for damages as set forth below.

**PRAYER FOR RELIEF**

1. For a preliminary and permanent injunction enjoining the Board from taking any actions on behalf of the Corporation unless and until a third Board member is appointed, consistent with the requirements of California Corporations Code § 212(a) and Section 3.3 of the 2007 Bylaws. Unless and until enjoined and restrained by order of this Court, any actions taken by BlueSky's Board will cause grave and irreparable injury to Plaintiffs in that any such actions will be *ultra vires* and a violation of both it's the 2007 Bylaws and the California Corporations Code. Plaintiffs have no adequate remedy at law to prevent the Board from acting unlawfully during the pendency of this litigation. Damages would not be adequate compensation for any *ultra vires* actions taken by the Board, as such damages would be insufficient to compensate Plaintiffs for any harm caused to BlueSky as a result of said actions;

2. For the imposition of a constructive trust against any and all proceeds and/or

1 | profits received by Mr. Hall from unlawful "bonuses" and compensation paid to himself and/or his family members;

3. For a declaration that any actions taken by BlueSky's Board during the period in which it consisted of just two (2) members is a violation of both California Corporations Code § 212(a) and Section 3.3 of the 2007 Bylaws, and consequently *ultra vires* and of no legal effect.

4. For a declaration that Mr. Villa was voted onto the Board and has the right to serve as a director on BlueSky's Board until his removal and/or resignation, pursuant to the 2007 Bylaws.

5. For damages in an amount to be proven at trial;

6. For such other damages according to proof;

7. For attorneys' fees to the extent allow by law;

8. For pre-judgment interest according to proof;

9. For interest thereon from and after the date of judgment;

10. For costs of suit therein; and

11. For such other and further relief as the Court may deem just and proper.

Dated: June 2, 2016

**BUCHMAN PROVINE BROTHERS SMITH LLP**

By: /s/ Dominic Signorotti

Roger J. Brothers
Dominic V. Signorotti
Attorneys for Plaintiffs
BLUESKY COMPANIES, INC., a California corporation; PETER VILLA; PAUL HUNTER; ANTHONY TULINO; and OLIVER MARKHAM HEALEY III